hWALTZER, Judge.

STATEMENT OF THE CASE

The State seeks the review of the trial court’s denial of the State’s Motion to Recuse and of its adjudication holding Assistant District Attorney Glen Woods guilty of direct contempt for statements the attorney made outside of the courtroom.
*450 On 14 July 1995, a jury returned a guilty of second degree murder verdict against Louis Gibson. The Minute Entry reflects that defense counsel Donald Pinkston re-urged a motion for mistrial. The trial court ordered the State and defendant to provide a memorandum on the motion and set the motion for hearing on 19 July 1995.
The Times-Picayune reported on Saturday, 15 July 1995 in an article entitled “Judge considers slay case mistrial:
The prosecution thinks Reed’s decision to keep the trial open is political grandstanding by a judge rumored to have his eye on District Attorney Harry Connick’s job. “Judge Morris Reed appears not to be interested in justice, his interest in [sic] in screwing Harry Connick at every corner, and in every way,” said assistant DA Glen Woods as he stormed out of the courthouse.
In response to this report, the court issued a rule to show cause why Mr. Woods should not be held in contempt of court for having made disparaging remarks about Judge Reed which violated La.C.Cr.P. art. 20 and served to impair the dignity of the court and respect for its authority. Mr. Woods pled |2not guilty to the contempt charge and requested a trial on the matter. Mr. Woods moved to recuse Judge Reed, but Judge Reed denied the motion. A hearing was held on the contempt charge, at the conclusion of which the court found Mr. Woods in constructive contempt of court and imposed sentence of a $500.00 fine which was paid immediately to allow Mr. Woods to leave the courtroom. Mr. Woods orally moved for an “appeal” and was granted until 10 October in which to file for appellate review. Mr. Woods’ motion to reconsider sentence was set for 13 October. On 28 September the State filed assignment of errors and notice of intent and a return date was set for 20 October. Mr. Woods now comes before this court seeking relief from the trial court’s refusal to grant his Motion to Recuse and from the trial court’s adjudication of contempt and imposition of sentence thereon.

DISCUSSION

In his application, the relator raises three claims: (1) Judge Reed erred when he refused to recuse himself from the contempt hearing; (2) Judge Reed erred by finding the relator to be in constructive contempt of court; and (3) Judge Reed imposed an excessive sentence.
I.
With respect to his first issue, the relator first argues that the trial court erred by failing to consider the motion to recuse because it was filed “untimely.” The relator is correct in noting that the motion was filed timely. La.C.Cr.P. art. 674 provides:
A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to the [gcommencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675.
Here, the motion was filed on 27 September just prior to the start of trial. As such, it was filed timely.
The relator next argues that Judge Reed should have recused himself because at an earlier hearing, prior to having received evidence or heard argument on the issue, Judge Reed expressed his opinion that Mr. Woods was guilty of contempt and would be sent to jail. Relator bases this argument on La.C.Cr.P. art. 671, which provides in part:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial.
However, it does not appear that the remark made by Judge Reed necessarily showed his predisposition to finding the relator guilty of contempt. At the 30 August hearing wherein the relator pled not guilty to the contempt charge, the court and relator’s counsel at *451 tempted to set a date for the contempt hearing. Judge Reed asked counsel how long a delay he needed, and an off-the-record discussion was had, at the conclusion of which counsel noted that the relator was going to be involved in a first degree murder case which would take about a week to try and which would start the next week. Judge Reed then stated:
Well, maybe we should get this over with in the event that Mr. Woods has an incarceration time then he can have it behind him by the time the Frank case comes up and it won’t interfere with it.
|/The relator now argues that this comment indicated that Judge Reed had already decided that the relator was in contempt and thus was biased and should have recused himself. However, it appears more likely that Judge Reed was attempting to accommodate the relator’s trial schedule and was merely noting that there was a possibility that the relator could be incarcerated if found guilty. As such, this comment was not necessarily a comment on the relator’s guilt but rather was a discussion of possible sanctions which might be imposed if the relator were to be found guilty.
The relator relies on various eases dealing with the recusal of a judge who has expressed an opinion about the defendant’s guilt. In State v. Battieste, 597 So.2d 508 (La.App. 1st Cir.1992), writ granted in part, denied in part and vacated, 604 So.2d 960 (La.1992), the defendant elected to be tried by a jury. At one point while the jury was not present, the judge noted that he believed the defendant was guilty. On appeal, the First Circuit refused to find that the judge should have been recused, noting that although the judge’s statement may have been cause to remove him in a bench trial, it was not necessary to do so in a jury trial. In State v. Manning, 380 So.2d 54 (La.1980), the Court noted that a motion to recuse, filed the second day of a jury trial and based upon the judge’s comments made sometime prior to the start of trial, that he had formed an opinion as to the defendant’s guilt, was untimely. In State v. Gordy, 380 So.2d 1347 (La.1980), also a case involving a jury trial, the Court found that the defendant’s mere allegations, that the judge had represented him in prior cases and that an officer had told him that the judge had threatened to put the defendant away for the maximum amount of time if he came before him, did not mandate that the judge recuse himself.
| In re Merritt, 391 So.2d 440 (La.1980), held that the failure to appear would, if proven, have constituted a constructive contempt, and the defendant had not been afforded the notice and hearing required before a finding of constructive contempt. The Court also ordered that the contempt be heard by another judge due to the record of hostility and animosity between the judge and the defendant, which included three other prior eases of contempt which the Court had reviewed as well as the trial court’s statement that the defendant’s failure to appear was the “twelfth time” the defendant had disregarded the judge’s orders.
Likewise, in Kidd v. Caldwell, 371 So.2d 247 (La.1979), the Court remanded a hearing on a constructive contempt and ordered that it be held before another judge. The Court noted that although the transcript of the trial from which the contempt arose showed some hostility between the defendant (counsel for the accused at that trial) and the judge, this hostility alone would not have been sufficient to require recusal of the judge from the contempt hearing. The Court further noted, however, the judge’s subsequent acts of issuing an arrest warrant for the defendant prior to the Court’s ruling on the matter and his writing a letter to the appellate court asking for a swift decision in the case. The Supreme Court held that these further actions showed at least the possibility of the appearance of bias, and this coupled with the strong feelings between the judge and the defendant led the Court to remand the contempt hearing to be held before a different judge.
Here, by contrast, the transcripts of 30 August and 27 September hearings do not show such ongoing hostility between the relator and Judge Reed as was present in Merritt and Kidd. Indeed, at the 30 August hearing Judge 1¡¡Reed accommodated the relator’s trial schedule when choosing the date of the contempt hearing. In addition, there is no indication of earlier hostility between *452 the relator and Judge Reed. Thus, the factors which led the Court in Merritt and Kidd to remand the hearings to other judges are not present here. We therefore affirm the trial court’s denial of relator’s Motion to Re-cuse.
II.
Relator contends that his actions did not constitute constructive contempt. According to the newspaper report, the relator walked out of the courtroom and made a statement in the hallway of the courthouse to the press. At the contempt hearing, Judge Reed gave the relator the opportunity to make any mitigating statements, and then Judge Reed introduced an affidavit from the Times-Picayune reporter verifying his report. The reporter declined to testify.[1] Relator’s counsel objected to the introduction of this affidavit, noting that he was being denied the right to confront and question the reporter. Counsel then argued that the relator’s conduct did not constitute either a constructive or a direct contempt.
La.C.Cr.P. art. 20 provides for direct and constructive contempt of court. La.C.Cr.P. art. 23 sets forth a list of behaviors which constitute a constructive contempt. Judge Reed found the relator to be in constructive contempt, saying:
I think the very disrespectful, profane and disparaging remark uttered by Mr. Woods in a case that was actively before this tribunal in the State v. Lewis Gibson, Case Number 366-000, was 17both profane — was profane, disruptive, disparaging and untrue, made by a judicial official when a matter that was before this Court to be ruled upon. [sic].
However, it does not appear that the relator’s statements, made outside the courtroom and out of Judge Reed’s presence, comprise either a constructive or a direct contempt. La.C.Cr.P. art. 23 provides:
A constructive contempt of court is any contempt other than a direct one.
A constructive contempt includes, but is not limited to any of the following acts:
it) Willful neglect or violation of duty by a clerk, sheriff, or other person elected, appointed, or employed to assist the court in the administration of justice;
(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of court;
(3) Removal or attempted removal of any person or of property in the custody of an officer acting under the authority of a judgment, order, mandate, writ, or process of the court;
(4) Unlawful detention of a witness, the defendant or his attorney, or the district attorney, while going to, remaining at, or returning from the court;
(5) Improper conversation by a juror or venireman with any person relative to the merits of a case which is being, or may be, tried by a jury of which the juror is a member, or of which the venireman may become a member; or receipt by a juror or venireman of a communication from any person with reference to such a case without making an immediate disclosure to the court of the substance thereof;
(6) Assuming to act as a juror, or as an attorney or other officer of the court, without lawful authority;
(7) Willful disobedience by an inferior court, judge, or other official thereof, of the lawful judgment, order, mandate, writ, or process of an appellate court, rendered in connection with an appeal from a judgment or order of the inferior court, or in connection with a review of such judgment or order under a supervisory writ.
| gRelator’s statement does not rise to the magnitude of any of these examples of constructive contempt. Although this list is not meant to be exhaustive, our research discloses no case where similar actions were found to be constructive contempt. The relator’s actions did not constitute a constructive contempt of court.
A reading of the transcript of the contempt hearing reveals that perhaps Judge Reed was trying to equate a constructive contempt of court with a violation of the Louisiana *453 Lawyer’s Oath, taken by the relator when he became a member of the Bar, which Judge Reed quoted as promising to “maintain a respect due to courts of justice and judicial offices.” It is true that the relator’s statement could possibly be seen to be disrespectful of a judicial office, but this still would not make it a constructive contempt of court.
The direct contempt article prohibits, inter alia,:
(5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority. La.C.Cr.P. art. 21.
While the relator’s statement could be seen as contumacious, it was not committed in the immediate view and presence of the court and within the court’s personal knowledge and, therefore, is not a direct contempt. Id.
There is much merit in the relator’s assertions that the statement was an expression of his First Amendment rights. The Louisiana Constitution provides:
No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom. La. Const. Art. I, See. 7.
The United States Constitution provides in pertinent part:
| sCongress shall make no law ... abridging the freedom of speech, or of the press. U.S. Const.Amendment 1.
The United States Supreme Court held that the federal provision’s preclusion of a civil suit for libel by a public official for criticism of his official conduct for a false statement made with actual malice also protects defendant against a charge of criminal libel:
Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth. Garrison v. Louisiana, 379 U.S. 64, 73, 85 S.Ct. 209, 215 [13 L.Ed.2d 125] (1964).
III.
By his third claim, the relator contends that the trial court imposed an excessive sentence. Because we have vacated his conviction, this claim is moot.

CONCLUSION AND DECREE

Accordingly, we grant Relator’s application for writ of certiorari and review, and vacate the adjudication of contempt and the sentence imposed thereon.

WRIT GRANTED. ADJUDICATION OF CONTEMPT AND SENTENCE VACATED.

PLOTKIN, J., Concurs.

. Documents attached to the State's application indicate that the reporter refused to testify pursuant to La.R.S. 45:1459, which concerns a reporter's right to contest a subpoena to testify.