558 So.2d 325 (1990)
STATE of Louisiana
v.
Jimmy Ray JOHNSON.
No. CR89-774.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
Rehearing Denied April 10, 1990.
*326 J. Michael Small, Alexandria, for defendant-appellant.
Cliff Strider, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before FORET, STOKER and KING, JJ.
STOKER, Judge.
Defendant pleaded guilty to one count of possession of marijuana with intent to distribute and one count of possession of cocaine with intent to distribute, reserving his right to appeal the denials of his motions to suppress the evidence and motion for defense witness immunity. Defendant was sentenced to five years at hard labor on each count, to run concurrently. The sentences were suspended and defendant was placed on five years active probation with the conditions that defendant serve two years in the parish prison and pay a $1000 fine. Defendant appeals the denial of his motions to suppress evidence and motion for defense witness immunity pursuant to State v. Crosby, 338 So.2d 584 (La.1976).
On appeal defendant assigns as error the trial court's denial of his motion to suppress the evidence seized pursuant to a search warrant which is allegedly invalid due to noncompliance with the particularity requirement. Defendant also assigns as error the trial court's refusal to grant statutory or judicial use immunity to a defense witness at the hearing of defendant's supplemental motion to suppress and traverse allegations of the affiant. We affirm.

PARTICULARITY REQUIREMENT
Defendant alleges the trial court erred in denying his motion to suppress the evidence seized from his trailer (125 pounds of marijuana, six ounces of cocaine and drug paraphernalia) pursuant to the search warrant. Defendant contends the warrant failed to describe with particularity the premises to be searched in violation of the Fourth Amendment of the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution. Additionally, defendant contends that the good faith exception to the exclusionary rule should not apply in this case to validate an otherwise invalid search.
A search warrant must describe with particularity the place to be searched. The object of the description in a search warrant is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. State v. Manzella, 392 So.2d 403 (La.1980); State v. Segers, 355 So.2d 238 (La.1978); State v. Cobbs, 350 So.2d 168 *327 (La.1977). Thus, a minor error in the description of the premises to be searched does not necessarily render the evidence seized inadmissible. State v. Manzella, supra, and cases cited therein.
The affidavit and the search warrant describe the place to be searched as follows:
"A white Dodge motor home parked underneath a large shade tree behind a white frame house located 5.3 miles off Hwy. 1 on Latanier Road, Rapides Parish, La. and its curtilage."
The facts recited in the affidavit to establish the basis for the issuance of the warrant additionally are as follows:
"The individual staying in the motor home is a subject known as Jimmy Ray Johnson. The motor home is parked behind a wood frame dwelling where a subject by the name of Paul Johnson resides. The affiant and Det. Ronnie Sellers of the RPSO narcotics squad have seen the target motor home and will be present during the execution of this warrant."
At the hearing on the motion to suppress it was established that defendant resides in a white Winnebago trailer underneath a large shade tree behind a green frame house owned by W.J. Johnson. "W.J. Johnson" is on the mailbox in front of the house. Defendant's home is 5.6 miles down Highway 457, or the Poland Road, off of Highway 1. Apparently, Highway 457 is known locally as the Latanier Road on one side of Highway 1 and the Poland Road on the other side of Highway 1. However, the evidence at trial tended to establish that the sign to Poland was removed several years ago and only the sign to Latanier remains at the intersection of Highway 1 and Highway 457. Finally, it was shown that there is a white or beige frame house, the W.D. Chelette residence, 5.3 miles down the Poland Road with a white travel trailer parked behind it.
Defendant contends that the search warrant is invalid because it more particularly described the Chelette residence rather than the Johnson residence. Defendant relies on State v. Manzella, 392 So.2d 403 (La.1980), to support the proposition that a warrant does not meet the particularity requirement if it describes the wrong place to be searched. In Manzella the search warrant recited the incorrect address number. The Supreme Court held the warrant invalid as not meeting the particularity requirement. However, in Manzella the policemen who executed the search had no personal knowledge of the place to be searched; therefore the probability that the wrong premises would be searched was great. In State v. Hysell, 364 So.2d 1300 (La.1978), the court upheld a search warrant even though there were two apartments at the address listed because the officers executing the search knew which apartment was to be searched since the informant had pointed it out to them. Other cases which support the proposition that a defective search warrant will be upheld where the place to be searched is known to someone executing the warrant are: State v. Scramuzza, 408 So.2d 1316 (La.1982); State v. Johnson, 408 So.2d 1280 (La.1982); State v. Smith, 397 So.2d 1326 (La.1981); State v. Case, 363 So.2d 486 (La.1978); State v. Johnson, 534 So.2d 1322 (La.App. 4th Cir.1988); State v. Bailey, 446 So.2d 352 (La.App. 4th Cir.1984).
The discrepancies in the affidavit and warrant were easily and reasonably explained at trial by the fact that Detectives Powdrill and Sellers surveilled the Johnson house and trailer at nighttime. The only illumination was a dusk to dawn light on the side of the house. Therefore, the color was difficult to discern. Moreover, a person unfamiliar with the locale could reasonably believe that the Latanier sign at the intersection referred to all of Highway 457 and not just one part of it. Finally, the .3 mile difference in distance could easily be the fault of inadequate lighting to clearly read the odometer, tire size or human error.
The State contends and the trial court found that, although there are discrepancies in the search warrant description, there was no possibility that the wrong premises would be searched since the name Johnson was on the mailbox outside of the *328 correct house to be searched, whereas the Chelette residence had "Chelette" on the mailbox. Also, the two officers who surveilled the Johnson house and trailer prior to obtaining the search warrant, one of whom was the affiant, were present during the execution of the warrant. Finally, the travel trailer parked by the Chelette home is not the residence of Jimmy Ray Johnson. Therefore, the descriptions in the search warrant and supporting affidavit do not particularize the Chelette residence instead of the Johnson residence. We affirm the trial court's holding sustaining the validity of the search warrant under the particularity requirement.
In our opinion there is an alternative reason why the search conducted pursuant to the warrant should be upheld. Assuming for the sake of argument that the warrant was defective for the reasons defendant contends, we think that the good faith exception of the exclusionary rule would apply in this case. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This court has adopted the Leon good faith exception. State v. Martin, 487 So.2d 1295 (La.App.3d Cir.), writ denied, 491 So.2d 25 (La.1986); State v. Ebey, 491 So.2d 498 (La.App. 3d Cir. 1986); State v. Miller, 495 So.2d 422 (La. App.3d Cir.1986) and State v. Newsome, 544 So.2d 82 (La.App. 3d Cir.1989). Other Louisiana Courts of Appeal have adopted the Leon rule. See State v. Wood, 457 So.2d 206 (La.App.2d Cir.1984); State v. Green, 478 So.2d 583 (La.App. 2d Cir.1985); State v. Slaid, 508 So.2d 597 (La.App. 2d Cir.), writ denied, 513 So.2d 819 (La.1987); State v. Shannon, 472 So.2d 286 (La.App. 1st Cir.), writ denied, 476 So.2d 349 (La. 1985); State v. Shrader, 514 So.2d 213 (La.App. 5th Cir.1987); State v. Watkins, 499 So.2d 91 (La.App. 4th Cir.1986); State v. Scott, 499 So.2d 1248 (La.App. 4th Cir. 1986) and State v. DiMaggio, 461 So.2d 439 (La.App. 5th Cir.1984).
The law officers in this case acted in reasonably good faith. Our discussion of the facts amply demonstrates this.

DEFENSE WITNESS IMMUNITY
Defendant contends the trial court erred in failing to grant statutory or judicial use immunity to a defense witness during the hearing on the supplemental motion to suppress. Defendant alleges that the trial court's failure to grant defense witness immunity violated his right to present a defense under the Sixth Amendment of the U.S. Constitution and Article I, § 16 of the Louisiana Constitution (1974).
During the hearing on the supplemental motion to suppress, defendant attempted to traverse allegations made by the affiant in securing search warrants for defendant's car and mobile home. Defendant intended to impeach the credibility of the affiant and the validity of the search warrant and affidavit through the testimony of the affiant's confidential informant. The informant, Ray Windham, requested the assistance of counsel prior to testifying because he believed his testimony might be self-incriminating. Upon the advice of counsel, Windham invoked his right against self-incrimination.
Defendant requested the court to grant Windham immunity in exchange for his testimony. Defendant argued that the testimony would establish that Windham had not been inside defendant's trailer within 48 hours of the affidavit being made as alleged by the affiant. Defendant also alleged that Windham's testimony as to the affiant's statements in the affidavits for the other two search warrants (one for defendant's car and one for the home of an alleged co-conspirator) would impeach the affiant's credibility. The trial court declined to grant Windham defense witness immunity on the ground that there is no basis in Louisiana law or jurisprudence for such immunity.
We find no merit to defendant's contention that Windham should have been granted statutory immunity under LSA-C.Cr.P. art. 439.1. The statute clearly provides that statutory immunity be given only upon request of the attorney general in conjunction with the prosecuting district attorney, a situation not present in this case. See *329 State v. Lombard, 486 So.2d 106 (La.1986); State v. Mattheson, 407 So.2d 1150 (La. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); State v. Edwards, 419 So.2d 881 (La.1982); State v. Bice, 407 So.2d 1234 (La.1981); State v. Thomas, 504 So.2d 907 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987); State v. Wade, 442 So.2d 681 (La.App. 1st Cir. 1983), writ denied, 444 So.2d 1245 (La. 1984).
We also find that defendant is not entitled to judicial use defense witness immunity for Windham. Defense witness immunity has never been recognized in Louisiana. In State v. Mattheson, supra, the Supreme Court rejected a claim for judicial use immunity for a defense witness on the grounds that:
"There is no statutory authority for a Louisiana court to grant a defense witness use immunity absent a request from the attorney general together with the district attorney for the district in which the proceeding is or may be held. La. Code Crim.P. art. 439.1. Therefore, any judicially-fashioned immunity must arise from the constitutional guarantees of compulsory process or due process.
"Claims for defense witness use immunity have been uniformly rejected by almost all of the federal circuit courts of appeals that have considered the matter. United States v. Turkish, 623 F.2d 769 (2d Cir.1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 [1981], and cases cited therein.
"We do not consider that the sixth amendment supports a claim for defense witness immunity. Traditionally, the sixth amendment's compulsory process clause gives defendant the right to bring his witness to court and have the witness' nonprivileged testimony heard, but does not carry with it the traditional right to displace a proper claim of privilege, including the privilege against self-incrimination. United States v. Turkish, supra; United States v. Lenz, 616 F.2d 960 (6th Cir.1980), cert. denied, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 [1980]. Nor has section 16 of article 1 of the Louisiana Constitution of 1974 been construed to grant such a right.
"Additionally, we do not consider that the due process clause requires that defense witness immunity must be ordered whenever it seems fair to grant it. The essential fairness required by the fifth amendment guards the defendant against overreaching by the prosecutor and insulates him against prejudice. It does not create general obligations for prosecutors or courts to obtain evidence protected by lawful privileges. United States v. Turkish, supra.

* * * * * *
"We consider that a trial judge properly rejects a claim for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution. Hence, the trial judge correctly denied defense witness immunity in this case." (Footnotes omitted.)
See also, State v. Lombard, supra; State v. Edwards, supra; State v. Bice, supra; State v. Harris, 510 So.2d 439 (La.App. 1st Cir.1987), writ denied, 538 So.2d 610 (La. 1989); State v. Thomas, supra; State v. Birdsong, 452 So.2d 1236 (La.App. 2d Cir.), writ denied, 457 So.2d 1200 (La.1984); and State v. Wade, supra. If Windham's testimony would be self-incriminating, then he is clearly a potential target of prosecution and the trial court properly denied the claim for defense witness immunity.
Defendant argues that there should be instances where a court would grant defense witness immunity, as set forth by the federal Third Circuit Court in Government of Virgin Islands v. Smith, 615 F.2d 964 (3d Cir.1980). Smith sets forth five prerequisites for use of a judicially created defense witness immunity: (1) Immunity must be properly sought in the district court; (2) The defense witness must be available to testify; (3) The proffered testimony must be clearly exculpatory; (4) The testimony must be essential; and (5) There must be no strong governmental interests which countervail against a grant of immunity. Defendant has clearly not met the third prerequisite; the proffered testimony *330 is not clearly exculpatory. The proffered testimony would tend only to show that the affiant lied in the affidavit as to when Windham saw the marijuana in defendant's trailer. The proffered testimony would not show that defendant is clearly innocent of the crimes of possession with intent to distribute marijuana and cocaine; 125 pounds of marijuana, six ounces of cocaine and drug paraphernalia were seized from defendant's trailer.
Therefore, we hold that the trial court did not err in refusing to grant statutory or defense witness immunity to Ray Windham. Since defendant has failed to carry his burden of proving by a preponderance of the evidence that the affidavit contains false statements, the trial court did not err in denying defendant's supplemental motion to suppress evidence. State v. Paster, 373 So.2d 170 (La.1979).

CONCLUSION
Accordingly, for the reasons given, the trial court's judgments denying defendant's motions to suppress and motion to grant defense witness immunity are affirmed. Defendant's convictions are affirmed.
AFFIRMED.